Oyez, oyez, oyez. All persons have their manifesto in the Circuit before the Honorable Massachusetts Court of Appeals for the Fourth Circuit must drop it and give it their attention. So the Court is now sitting. Godspeed and may I have faith in this Honorable Court. Good morning and welcome to the Fourth Circuit. I got ahead of our clerk, Mr. Coleman, there, just very briefly. I'm Judge Agee. I'm joined today by Judge Keenan, who's on the telephone from Northern Virginia, and Judge Richardson, who's in Columbia, South Carolina. And we're going to hear argument in Maryland Shall Issue at Al v. Hogan. So with that, and I'd also remind counsel this morning that as they argue, try to keep the background noise to a minimum in terms of shuffling papers or if you're at home, dogs or children running around. And when one of the judges has a question, they'll either raise their hand or start to make noise, so that's your signal to wait for a question. So with that, Mr. Pennack, we'll be glad to hear from you. Thank you, Your Honor. Mark Pennack, the president of Maryland Shall Issue and counsel for Maryland Shall Issue and the individual plaintiffs. With me on the conference call is Mr. Sweeney, who is counsel for Atlantic Guns, who already has the allocation of time between us for presentation and rebuttal, so I'll proceed directly to the merits. In our view, this case is controlled by the Supreme Court's decisions in Warth and Lujan. In particular, we want to stress that the nature of the claim, what the Warth demands that the court inquire into, is a challenge to the constitutionality of the handgun qualification statute and regulations. It's not a challenge to a denial of a handgun qualification license. The plaintiffs in this case do not want a handgun qualification license. They have not applied for a handgun qualification license. They have no intention of applying for a handgun qualification license. The constitutionality of the statute itself is what issues. In this respect, I'd like to read from the court a brief portion of Lujan and put this in control. Lujan states, when the suit is one challenging the legality of government action or inaction, the nature of the facts that must be averred at the summary judgment stage or proved at the trial stage, in order to establish standing, depends considerably upon whether the plaintiff is himself an object of the action or foregone action at issue. If he is, there is ordinarily little question the action or inaction has caused him injury and that a judgment preventing or requiring the action will redress it. Plaintiffs in this case, the individual plaintiffs in this case, are the object of the statute. If you look at the statute itself, 5-117.1c, it provides that a person may not acquire a handgun, may not purchase, may not rent, may not receive a handgun unless he has a handgun qualification license. Similarly, for the dealer, it provides in subpart B, the dealer may not sell, rent, or transfer, quote-unquote, a handgun without the purchaser or transferee or rentee having a handgun qualification license. We are the direct targets of this legislation. The legally protected interest here that we're seeking to assert is the constitutional right to acquire a handgun. Now, there is no dispute in this case, and certainly the state hasn't disputed, that there is in existence such a right. After Heller, that really is beyond dispute. So, the question before you is whether we have standing to do that or, as the district court held, we actually must apply for that permit that we do not want in order to have standing to challenge the constitutionality of the requirement itself. Counsel, let me just be clear. You're arguing the Second Amendment standing question. Are you also arguing the due process vagueness question? Yes, I will get to that, Your Honor. I will get to it now. Just wanted to be clear. So, we have standing. I'll go there right now because it's an important point. After this court's in-bank decision, Note 12 of Manning v. Cadwell, the court very clearly held that you cannot resolve the question of standing to challenge a vague statute until and unless you get to the merits because the harm to the plaintiffs is tied up with the merits. Judge Garbus, in denying the state's motion to dismiss, made the same point. So, we think it's utterly clear that the nature of the impact on the individuals here must weigh a merit's ruling after Manning. So, indeed, and if I may get to my notes on that, I would like to direct the court's attention to the North Carolina right to life v. Bartlett case that this court sided and relied on in the Kenning v. Wilson case. And it's a direct parallel to the situation we have here where the court very clearly stated that the state's suggestion that they were going to apply the statute and interpret the statute in a different way than what the language of the statute itself was a litigation position, which was not binding, provided no such guarantee to the plaintiffs that the feared interpretation that they had at issue in that case would, in fact, not be enforced. And we have exactly the parallel here. The state relies on a post-litigation advisory that they promulgated after the motion to dismiss was denied. And they say, well, not to worry. We don't have to worry about receive and the ambiguity associated with that, meaning mere possession, at least possibly, because we're going to interpret that as a permanent receipt. Well, the normal dictionary definition of receipt doesn't admit of that definition. But they're going to say, we interpret it that way, and that should be good enough for you. Well, it wasn't good enough for this court in the North Carolina case. The court said it provides no guarantee that the statute would not be enforced by a state's attorney or by an law enforcement officer. Indeed, the court made the same point as that issue in this case, is that the interpretation they offered offered no support, was not a regulation. We have exactly the situation here, where the advisory is not a regulation. It's not binding on anyone, including the mere possessors. And the ambiguity associated with the term receipt is profound. It affects not only the plaintiffs, but it affects every MSI member who's an instructor, including myself. Because we do not understand how receipt can be used to interpret the mean transfer permanently, where the normal usage of the word may well encompass a temporary transfer, such as used in the home, from spouse to spouse, or used at a range, or during the course of a formal or informal instruction. But I would like to turn to the merits briefly. Okay, before you do that, excuse me, Mr. Penick, this is Judge Keenan, and I'd like to ask you a question about organizational standing of MSI. As I understand it, you are serving organizational standing in this case. And my question is, how do you distinguish our 2012 decision in Lane versus Holder, where we said that mere expense does not constitute an injury. In fact, the fact that resources have to be diverted to spend money on educating members regarding new issues is a budgetary consideration, but it's not a method of establishing standing. How do you distinguish your situation from Lane versus Holder? Well, a couple of points, Your Honor. First, you don't need to get to MSI's organizational standing if any of the plaintiffs have standing. And so if the plaintiffs have standing, you simply can leave that unaddressed, because all it takes is standing of one plaintiff. Right, I understand that, but I'm asking you about organizational standing. In our view, Lane is easily distinguishable on the facts involved there, and by more recent Supreme Court precedent, including the Department of Commerce decision, where the court reaffirmed Haven's point that diversion of resources is, in fact, a cognizable harm. And we have more than simply diversion of resources here. MSI's mission, if you will, is to encourage the purchase and acquisition by law-abiding persons of a handgun. Now, that is literally impossible under the HQL litigation. It wasn't a budgetary choice. We're not happy about having to spend resources, but all the case law says is if the government's decision forces the allocation of resources in order to accomplish the mission, then that's enough injury. Well, we have more injury. We have assertion here in my declaration that the government's enactment of these requirements actually had an adverse impact on our membership. That was not a precedent at all in Lane. I thought your membership win has gone up. Well, that may be, Your Honor. It has, but that's a resolution of the merits of that allegation. There are these sworn declaration that our membership went down in part at least, and that's all it takes is in part, because of the enactment of this legislation must be taken at true at this stage. And that's what the clearance that the lieutenant's holding. Excuse me, Mr. Panek, but if the facts of the record indicate otherwise that the membership has gone up, do you have evidence that it has gone down beyond the mere assertion that it's gone down? Or you're saying it's just enough to say it has been impeded, and you don't have to produce any evidence? A sworn declaration is evidence, Your Honor, and I was there at the time, so I witnessed this. So the point on this is, is that we have a multiple attitude. Well, you can't testify. Excuse me, Mr. Panek, you can't testify here today. It's your counsel. That's correct, and I'm not trying to testify, but this is my declaration that this happened, and that must be taken as true. Now, I see my time has expired, and I would like to reserve the remainder of my time for rebuttal. Thank you. Thank you very much, Mr. Panek. Mr. Sweeney, it's up to you now. Thank you, Your Honor. I represent Atlantic Guns, Inc., a licensed firearms retailer that has been family-owned and operated in Maryland since 1950. Our standing position is quite straightforward. The handgun license requirement impacts directly the ability of Atlantic Guns to sell firearms to qualified customers who do not have a handgun license. That, in turn, creates injury fairly traceable to the law that is redressable by a favorable outcome in this lawsuit. The vendor in Craig v. Boren had a similar situation, and the court said it is obliged either to heed the statutory prohibition, thereby incurring direct economic injury through the constriction of its market, or to disobey the statutory command and suffer sanctions, perhaps loss of license. There is no doubt Atlantic Guns has a sufficient stake here to vigorously and cogently assert the rights of its customers as well as its own. Atlantic Guns demonstrated its business has been impacted by the handgun license requirement. Its market has been incrementally constricted because it can no longer sell to handgun buyers who do not have a license. Mr. Slaney, your argument, I take it your principal argument here is that your client has standing by virtue of economic injury? Yes, it does, and because it has economic injury, it may represent the rights of its customers. This Court need not reach the question of whether or not Atlantic Guns has a constitutional right to sell firearms. The Supreme Court precedents from Craig v. Boren and Lujan and Griswold all make it clear that under these circumstances, it has third-party standing. Counsel, I just want to make sure, you're making both arguments though, right? That it has third-party standing, but also that it has its own direct standing based on your asserted claim that the seller has his own Second Amendment right, and the merits of that question ultimately will be resolved at some later point, but you're making both standing arguments today, right? Absolutely correct, Your Honor. The first-standing argument, which is the third-party standing, is clearly supported by the Supreme Court. Counsel, Judge Keenan is going to ask you a question. Excuse me, Your Honor. Mr. Sweeney, as I understood it, you were maybe making a third-standing argument, too, that you were asserting that this handgun licensing requirement impedes the ability of the third parties to procure handguns. Isn't that correct? Yeah, this is the same third-party argument that the beer vendor made in the Craig v. Boren case. In other words, the prohibition of the statute on my client's ability to sell impedes the right of the buyers to buy. That is the classic third-party standing. Yeah, and so what I'm trying to understand is you're saying we don't have to reach whether you have a constitutional right to sell guns yourself, Atlantic guns, but you are saying that there is a constitutional right of Atlantic guns to assert the rights of the third parties' putative purchasers. Is that correct? That is correct. I'm making both arguments. Mr. Sweeney, just to be sure, it would seem to me that if your client has standing, the simplest basis would be to say that it has its own independent economic injury, which gives it standing to challenge the statute, and it would be unnecessary to reach any of these other issues. That's correct. And the Lujan decision makes clear that under Rule 56, the averments of my client in his declaration and the other evidence must be taken as true on the question of injury. This Court must accept them under Rule 56 at this stage of the proceeding. Injury is clear here. Sales have been lost. Income has been lost. And Mr. Sweeney, then, if we were to agree with you that the economic injury is supported by this record, does the rest of the standing inquiry then go away? And does it really matter whether the individual plaintiffs or MSI has standing if Atlantic guns can establish its standing in this case? Under this Court and the Supreme Court's principle, standing for one is standing for all. And it is no question that the retailer here has the most straightforward demonstration of injury in fact, and a legal right to represent both its own interests as well as the rights of its customers. But that, counsel, just to make sure, that works only insofar as we find that you can represent your client's interests and the constitutional interest of your customers, that you have third-party standing. Because otherwise, the scope of your right as a seller may well be different than the scope of the right of an individual. And so there can well be a difference as to the right asserted of a seller and an individual if we don't find third-party standing for you. There's a potential for that. I don't know that it's present in this case, Your Honor. The Ninth Circuit in Teixeira, when it looked at that, said ordinarily there would be no need to disentangle an asserted right of a retailer to sell firearms from the rights of potential firearm buyers to acquire them. They are the opposite sides of the same coin, the right to sell and the right to acquire. Wasn't that based on the premise that they were representing the rights of their customers? That was. And in this case, we are representing the rights of our customers as well as our own constitutional right to sell firearms. All right. Go ahead, Judge Kainan. Yeah. But, Mr. Sweeney, I guess I'm trying to untangle this a little bit, too. So if we agree that you have economic injury and we agree that you have a right to assert the constitutional rights of your customers, then would it be dicta for us to address any other standing issue in this case? I have seen many courts not address the other standing issues when they find the standing of one party is established. But they typically don't dismiss those others because at that point they are given standing because standing for one is standing for all. All right. Thank you, Mr. Sweeney. You have some time in rebuttal. So now we're here for Mr. Scott. Good morning, Your Honors. May it please the Court. Robert Scott, Assistant Attorney General for the State of Maryland, on behalf of the appellees in this case, Governor Larry Hogan and former Superintendent of State Police William Pelosi. The district court correctly held in this case that all of the plaintiffs lack standing to bring their claims challenging the statute of limitations. There are three categories, as the Court knows, of plaintiffs in this case. There are the individual plaintiffs, then there's MSI, Maryland Shell Issue, and then there's Atlantic Guns. I'm going to take them one at a time. The individual plaintiffs are Deborah Miller and Susan Vizas. They both test – neither of them test – well, before I get into that, as the Court knows, they need to show in order to establish their standing in this case that they have suffered an injury, in fact, which is concrete and particularized and actual or imminent, not conjectural or hypothetical. Further, because the plaintiffs in this case are seeking only declaratory and injunctive relief, they must show that the injury is ongoing and they cannot rely on past harms in order to establish their standing. And that's – this Court's hold – one of the issues that this Court addressed in Kenny B. Wilson. Yes, Your Honor. Counsel? Yes, Your Honor. On that score, can you address the Supreme Court's decisions in Gratz, which is the affirmative action set of cases, where the Court said that an individual had standing to challenge affirmative action, even though they had not applied for admission or for transfer, I think was the technical term. And the Court said that he demonstrated, he being the individual, the plaintiff, that he was able and ready to apply as soon as the policy changed. And the Court in Gratz said that that satisfied standing. And so what I'm curious about is for individual plaintiffs here, why doesn't that same analysis apply? That the plaintiffs here are, quote, able and ready to, you know, go buy their gun as soon as the State of Maryland removes this barrier. And that under Gratz, that's sufficient to establish all the things you just described. Yes, Your Honor. I think, first of all, as a matter of the record, none of these, neither of these plaintiffs testified that they were ready to buy a gun. And, in fact, they had no immediate plans to do so. They hadn't decided what kind of gun they wanted, they hadn't really decided what kind of features on the gun they wanted, they hadn't really shopped for guns. Well, Mr. Scott, what difference does that make in this setting? As I understand it, the individual plaintiffs don't want the handgun license. So this is a question, a claim of an impediment to, at least on the Second Amendment claim, of their Second Amendment right. And as I understand the record, they have pled and testified that they want a handgun for self-defense, but they're deterred from going forward because of the application of the statutory standards, including cost and the expenditure of their time. So I'm not, I was confused as to why the District Court and your briefing went into all the discussion of cases that deal with the application of a government policy where somebody wants a permit and they didn't get it for whatever reason or it was denied to them on a discriminatory basis or an additional burden some other segment didn't get. But here, they're claiming the burden is on their right to acquire a firearm and the exercise of that right. They don't want the permit. That's correct, Your Honor. The reason that the facts showing that these individual plaintiffs are not actually planning or have no concrete plans to buy a handgun is because under Lujan, the injury has to be imminent. And in Lujan, as the court knows, you had a situation where the plaintiffs were challenging the application of the Endangered Species Act and they were claiming that the application that the defendants were imposing in that case meant that they were going to be deprived at some future date of going to observe wildlife in their natural habitats in foreign countries. And the court said that's not enough. Now, why would that make a difference here, though? Because as I understand what these plaintiffs say, individual plaintiffs, it doesn't matter what the particular model of a handgun is or how much the particular price may be. They are deterred by the simple factor of the cost, which in most cases, if not all cases, is the paradigm of injury in fact and the time that's required to apply for the license and go through the fingerprinting and take the course. So it doesn't matter whether they want a particular gun on a particular date. It will always be the same circumstance. That's correct, Your Honor. But in order to establish imminent injury, there's got to be some concrete plan on their behalf to actually go and purchase a gun. And they don't have that imminent injury because they don't have any concrete plans to go out and buy a gun. They just disagree with the law. They disagree that they should have to go through these hoops in order to get the license they need to purchase the gun and just disagreeing with the law is not sufficient injury. Well, they didn't apply for the license and they didn't pay a fee. That goes back to one of the first questions I asked. This is not a case, as I understand it, where the claim is, we didn't get the permit or we didn't get the government privilege. And as best I can tell, all the cases in the district court's opinion go to that principle. Here they're arguing not about the application of a government policy, but the fact that the policy exists and its existence impairs their rights. That's correct, Your Honor. But in order to establish standing, they have to show an injury in fact. And applying for the license would be one way of doing that. They didn't do that, but they also haven't demonstrated any other injury. For example, in the First Amendment cases, yes, Your Honor. So do I take it you to say that you agree that there would be standing even if they didn't apply for a license, but if they had picked out the particular gun and they had the purchase order ready and they swore in a blood oath that the minute this law went away, they were going to go buy the gun? I mean, it sounds like you agree that in that scenario, an individual in that context would have standing. Well, that would satisfy the imminent portion of the test under Lujan in order to establish injury. Yes, Your Honor. If that's true, then what I'm hearing you say is when you read these deposition transcripts, it seems that you just don't believe their stated intent to go buy a gun. And, you know, you may not believe them, right, and it may turn out in the long run that you're able to prove that at trial. But don't we have to take their stated intent that they want to buy a gun and that this has dissuaded them from doing so? Don't we have to accept that? Well, the court didn't accept it in Lujan, where the plaintiffs in that case were saying at some future date, I want to go observe wildlife in a foreign country. And the court said without concrete plans to do that, that's not an imminent injury. But the difference in Lujan, right, is that they could have gone and done it today, right, and they were only asserting something in the future. The problem the plaintiffs have here is they can't go do it today, right? They're prohibited from buying the gun without your license. So I don't think Lujan helps you. I think at the court, you think that the plaintiffs are lying. And, you know, that may well be your view, but I don't see how that applies given the standard we've got for establishing standing. Your Honor, it's not that we that we think the plaintiffs are lying. Our argument is simply that they have not put in evidence any facts which show that this is going to be that this statute is good. They're going to suffer an imminent harm as a result of this statute because they're they have not provided any evidence of concrete plans to go out. It's a handgun, which is the activity which they are claiming they are precluded from engaging in. So that's the argument with respect to the imminent portion. With respect to the actual injury portion of the test, they haven't paid the fee. They haven't demonstrated any other actual injury that they've suffered. And therefore, in our view, they have not met the standard. Why would they have to pay the fee? That would be one that. Well, wait a minute. That defeats. It seems like the whole purpose of the claim that they made, which is the existence of the statute and the payment of the fee impairs my Second Amendment right. Not that the fee is too much, because that's not the an issue when standing or that I don't necessarily have the financial ability to pay it. That may be a different question. But again, this is not a case where they're challenging the application of the statute to them because they don't want the permit. So I'm having difficulty understanding why the fee and the expenses aren't a sufficient injury. In fact, and it would be imminent because there's no way they can proceed without paying it. Your Honor, my point on the fee is simply that the fact that they haven't paid it means that that is not an actual injury because they haven't actually paid the fee. That would be one way of establishing an injury. If one of these plaintiffs had, in fact, applied and paid the fee, then they would have established an injury. But neither of them have done that. And so I'd like to move on and talk about MSI before, unless the court has any more questions on the individuals, because I think Judge Keenan's questions on that point make clear that MSI does not have organizational standing here. It has not established by any evidence that its mission has been impeded by this law. To the contrary, Mr. Panak testified in his deposition that the law has not interfered with MSI's ability to communicate its message or undertake the cause that it wants to undertake. And in fact, although Mr. Panak is still insisting today that this law has somehow harmed MSI, its ability to attract members, the record is undisputed that their membership has increased. In the complaint, they alleged that their membership was approximately 770. And in Mr. Panak's declaration filed on summary judgment indicated it was 1,100. Yes, sir. Counsel, that's a separate argument from whether they have standing by virtue of their members. And so, like, taking Mr. Clark as an example, sort of going back to my earlier questions, it applies to Mr. Clark as well. He says, I want this bigger gun, and I was dissuaded from going to get it because of the HQL. And I mean, that's what his testimony is. Help me understand why that's not enough to establish standing for him. What more did he have to do? Did he need to name the manufacturer of the gun? Would that have been sufficient for you if he'd said, I want a larger Smith & Wesson? Does he need to name the caliber? Like, how specific do you think it has to be to pass muster? Well, Your Honor, again, it all comes back to an actual injury. A simple disagreement with the requirement of applying for the license is not a sufficient injury to apply to confer standing. And Mr. Clark did not apply for the license. Right, the injury to him is he wants a gun, and he can't get one because of your HQL. Correct, and he hasn't applied, and he hasn't demonstrated any injury. He hasn't paid any fee. He hasn't been inconvenienced in any way. He simply disagrees with the requirement, and under the court's precedent, that is not sufficient. An ideological opposition to a requirement of the state is not, does not confer standing. And that is basically what all these plaintiffs are saying. And your position, Maryland's position is that the only evidence here is an ideological disagreement, and not anything about, like, getting a gun. It's merely ideological. That's the state's position. They're linked. Those two things are linked because these plaintiffs all testified, well, particularly Mr. Clark testified, essentially. The reason I haven't applied is I disagree with this law. That's why I haven't applied for an HQL. I disagree that I should have to do that. And that is not sufficient injury to establish standard. And moving on to Atlantic Guns, I would like to address them as well. I think that the district court got it exactly right. There is no proof of actual injury here. Atlantic Guns was not able to identify a single customer that it turned away as a result of this law. Here we're at summary judgment, so this is not a determination on the merits. So in the record, as evidence for summary judgment purposes, which we have to take as accurate, or if there are conflicting versions, then the court couldn't make that decision on summary judgment. So there are two pieces of evidence. One, using the Maryland statistics, Atlantic Guns shows, as I read it, that since the adoption of the statute, their average yearly sale of handguns is down at least 500 guns a year. And then there's an affidavit from the owner, which again we would have to take as true, and I don't think there's any contradictory evidence. And the owner says that Atlantic Guns turns away, every week, customers totaling in the hundreds over five years, and that they've lost 20 percent of their prior handgun sales, and it goes on to give the cost of the handgun. I mean, to me that seems like to be a very concrete injury, in fact, that has occurred and that's denominated by numbers and dollars. Why isn't that sufficient to show economic injury here? And how is this different from the beer vendor in Craig v. Boren? Well, Your Honor, I'll take those one at a time. First of all, Mr. Schneider's testimony that they have been turning away customers is based on hearsay, because he's attesting to what the motivations of these potential customers are for their decision to not purchase a handgun. When asked at his deposition, who are these people who purportedly came in, sought to buy a handgun, and then were turned away by the HQL requirement, that he could not identify a single person. Not one customer could he identify was deterred by this. Why isn't that a merits question instead of a standing question? Well, because it goes to whether or not they've demonstrated injury in fact, Your Honor. And if they can't identify a single customer who was turned away by this law, they haven't shown that the law is the reason for this person purportedly deciding not to buy a handgun, and therefore the alleged injury is not traceable to the law, which is required for standing under Lujan. So is it your contention that the affidavit from Mr. Schneider that's in the record is false? No, Your Honor. It's our assertion that the portion of the affidavit that says that they've turned away customers because of the law is based on hearsay and should not be considered. It's inadmissible. We had no ability to test the veracity of this assertion because Mr. Schneider couldn't tell us who these people were. He's testifying in that declaration as to what the motivations were, the reasons that these customers made a decision not to purchase a gun, and we were not able to depose those people. That seems backwards. He's testifying why they turned them away, right? So he's testifying to his own motive, right? Customers come in. They say, here's $500. Give me a gun. He says, where's your HQL? I don't have one. I must turn you away. It's not their motive. It's not the customer's motivation. It's his own motivation that he's testifying to. I get that you don't believe him. You don't believe the plaintiffs. You don't believe him either, and you may well prove that, but what I don't understand is how we do that at this stage. Your Honor, the critical piece of Mr. Schneider's declaration here is, why did these customers decide not to purchase an HQL? And we don't know that because he can't tell us who those customers are. They may have decided to not buy a gun for multiple reasons. It's pure speculation. Unless he's going to testify, they told me that they decided not to buy a gun because they didn't like the HQL, and that deterred them. His point is we turned them away from buying a gun because they didn't have an HQL. That's the injury. What their motivation was to not get an HQL is irrelevant from his perspective, I thought. Well, I think the motivation is, what was the motivation for their decision not to proceed with the purchase of a gun? That's the relevant information, and we don't know that because he was not able to identify a single customer who was turned away or decided not to buy a gun as a result of this law. I hate to jump, but I want you to talk, if you would, just a second. We ended with your colleague for a minute, to talk about Atlantic Guns' third-party standing argument, just the third-party piece, and the hindrance argument. They assert sort of a generalized privacy interest that hinders the individuals from bringing these claims. You seem to dispute that and maybe point to the very plaintiffs who are bringing these claims. Talk to me for a minute about that. Well, Your Honor, I think that's exactly the point. This privacy argument, I don't think, withstands scrutiny because we've got multiple people who testified, both individual plaintiffs and also other witnesses who the plaintiffs identified. They came in and they testified about their history of using guns, why they wanted to buy a handgun, what guns their family members had. There was no request for confidentiality of any of that information, and so I just don't think the argument that privacy is somehow deterring these folks from bringing claims withstands scrutiny under those circumstances. I see my time is up unless the Court has any further questions. Thank you very much. I appreciate the Court's time and attention. And, Mr. Pinnock, you have some rebuttal time. Thank you, Your Honor. I think the state is failing to understand the legally cognizable interest here. This is not an ideological opposition to the statute, although there's plenty of that. This is the legally cognizable interest is the constitutional right to acquire a handgun. And it really doesn't matter why the person feels that the state has interfered with that right. It is undisputed that the handgun qualification license prevents that person from acquiring a handgun, unless he jumps through all the hoops and costs imposed by the regulatory regime. So I'd like to point out a hypothetical to make this point clear. Suppose instead of guns we were dealing with, we were dealing with the rights of a voter. And the state of Maryland, in its infinite wisdom, decided to impose a permitting system on the right to vote where you had to get a permit issued by a state agency, had to pay a fee for that permit, had to have four hours of instruction by a state-certified instructor, had to get fingerprinted. And would any member of this Court hesitate for a moment in holding that the voter did not have to actually apply for the permit or pay the fee in order to bring a facial challenge to that permitting system that interfered with his right to vote. The same hypothetical could be used for any number of First Amendment rights, the right to abortion. The harm here is on the exercise of the constitutional right. That he may not know the caliber of the gun he would like to buy is kind of beside the point. That he may not have investigated it. This is pointless because it's a futile exercise to investigate something you can't exercise when the state stands in the way. So I think the whole idea here... Counsel, will you give why you think the facts of Lujan, your colleague says, this is like the Endangered Species Act, this is like future unspecified harm, and without a plane ticket, and what he would say is without an application fee, your plaintiffs are just like the plaintiffs in Lujan, and they should lose based on the holding of Lujan itself. Why is that wrong? It's wrong because each one of these individual plaintiffs, and Mr. Clark is an example, and again, all it takes is an MSI number, Happiness Concern 1, has all testified that they would like to purchase a handgun, and have been deterred by the handgun qualification license from doing so. That's the only material fact that puts them... They could go out and buy whenever they're ready, but they can't do that without going through the hoops of the handgun qualification license. That's an immediate precedent. And so the distinction I'm hearing you draw is that there's a deterrence here of the HQL, where in Lujan, there was no deterrence on going to see the animals this afternoon. Correct. That's absolutely right. So you need only look to the D.C. Circuit's decision in Durres, indeed your own decision in Lane, where the court said the indirect injury associated with the individual plaintiffs there, because remember the statutory scheme there was a direct to the out-of-state dealer who could not sell to an out-of-state purchaser, and the harm there that the court said was indirect. Indeed, the harm was such indirect that the individual plaintiffs had to pay no state-imposed fee. Well, we have here a direct harm imposed because the statute signals out these individual plaintiffs as the object and target of the regulation. If those facts were found in Lane, the court would have found standee to that case, just as the court found standee in Durres under exactly the same circumstances. Right. Right. Now, Mr. Penick, I think you make a stronger argument when you stay away from Durres. Durres was an absolute prohibition on the U.S. citizen who was residing in Canada from being able to purchase a weapon. There's no absolute prohibition in this case. So I think your reliance on Durres, I don't think exists in this case unless you can convince me that there's another principle in Durres. Yes, Your Honor, and I would like to try, because I think Durres, this idea that you have to have to show it was impossible is a merit inquiry. That's the burden inquiry. Whether or not it's a question of how much this impacts you always goes to the merit. So what the district court has done here, I think this is important, has effectively held that no person who cannot allege that it is impossible to acquire a handgun has standing to challenge. That conflates the merit inquiry with the standing inquiry. The standing inquiry requires a minimal injury to a legally cognizable interest. Mr. Penick, if I could interrupt you again, and I understand your point, and I think you've been making a pretty strong argument, but what I'm worried about in this case for the future is, is it enough just to say I want to buy a gun? In other words, would we be opening up beyond the Second Amendment into any other conceivable claim? If somebody says, nope, I want to do what the law doesn't allow, would agreeing with you on that principle create a problem for the future of the law? That's what I'm really worried about here. In each case under Worth, the nature and source of the claim depends upon the nature of the right being claimed. So in this particular case, the right itself is the right to acquire. In a future case, then you have to examine what the right claim is. What is the nature of the claim itself? So I don't think that I can prognosticate how this will be applied in other cases, but I don't think it's possible to say that you don't have standing to say that it's impossible, unless you can say it's impossible for you to acquire the license. Right, it was impossible in Durst. So what I'm asking you, I guess, is what do you have to show in the record beyond just saying I want to buy a gun in the Second Amendment context? And I'm hearing you, I think, saying you don't have to show anything, just that I would like to buy a gun and the existence of a licensing requirement impedes my wish to buy a gun. Is that pretty much your basic position? We have to establish that the person genuinely desires to acquire a gun, and that the licensing regime in place here basically bans that right unless you jump through all the hoops. I think we've satisfied that. Those are the only material facts that are relevant in this case. So your answer to my question is yes, then. Yes, the fact that the person wants to buy a gun and there's this license requirement and all they have to say is I'm not going to buy a gun because I don't want to get a license. I don't think I should have to based on the Second Amendment rights that I possess. But that's enough. Any more than the voter in my hypothetical would have to say I have to show that I'm really going to vote in order to challenge the basic validity. No, no, I'm not arguing with you, Mr. Penica. I'm just trying to understand how far out you can go. I understand. Thank you. And I don't think that's far out at all. So I see my time has gone way over. I very much appreciate the course of time. Thank you. Thank you very much. Mr. Sweeney, you have some rebuttal time, and I'd ask you to start with this question. Assuming for purposes of argument that we determined Atlantic Guns had economic injury sufficient to show standing, once this case proceeded to the merits beyond the argument on behalf of Atlantic Guns itself because of its economic injury, what do you think Atlantic Guns would be entitled to argue on the merits with respect to the individual plaintiffs in this case by virtue of the standing provisions in other cases where the individual buyer has been affected? I have no doubt, Your Honor, that Atlantic Guns can vigorously represent the interests of the customers to purchase. Their Second Amendment right is restricted by the enforcement of the handgun requirement by Atlantic Guns. I have no doubt about that. I am less certain about the standing of Atlantic Guns to articulate and represent the rights of the individual plaintiffs with respect to the due process claims. But the Second Amendment rights, I have no doubt that the Atlantic Guns effectively stands in the shoes of its customers. Can you address the hindrance argument that you're, you know, indeed as shown by the plaintiffs in this particular case, your co-plaintiffs, that there's not a sufficient hindrance to permit you to assert third-party standing? That was next on my list. They're wrong. And the reason they're wrong is the prudential standards that are glossed over Article III standing requirements do not apply where there is direct impact on the litigant before the court sufficient to provide the stake in the litigation and its outcome to represent third-party interests. I refer, Your Honor, to the Kowalski decision in the Supreme Court that specifically said that. Hindrance is not a requirement. But the privacy rights- Well, but Kowalski just says there have been some First Amendment cases where the proposition you put forward has held. It doesn't actually say that it extends anywhere else or that we should look to that outside of those specific First Amendment cases, right? I mean- Yes, it does, Your Honor. It's a descriptive statement by Kowalski. I must disagree. Kowalski says two things that exempt parties from the prudential requirements. The first is the line of First Amendment precedent, such as the Munson Company case out of Maryland. The second line is the Craig v. Boren situation where the law directly impacts the litigant. And Kowalski makes clear that the prudential requirements are no more required in that set of circumstances than under the First Amendment. But I would take that one step further and say, by analogy, that because we're dealing with Second Amendment rights here, the same considerations that would exempt standing prudential requirements for a First Amendment case should apply here with equal vigor. The last point I'd like to make in response to your inquiry, Judge Richardson, with respect to Shira, the Ninth Circuit did not find that the individual firearm retailer in that case had a, quote, freestanding right to sell under the Second Amendment because all the other firearms retailers in the state could sell and were available to provide firearms to the customers. Here in Maryland, that's not the case. No firearms retailer can provide handguns to anyone who does not have a handgun license. So here, that right to sell should pertain because it's not freestanding, but as to Shira said, it's entangled with the right of the customer to acquire and necessary for them to acquire. I see my time is up. I thank you for your time and your patience. Well, my appreciation on behalf of the panel to all of the fine counsel who've argued today. This is an important case, and you've all done an excellent job both on briefing and oral argument. Ordinarily, as you know, our tradition in the Fourth Circuit is to come down from the bench and shake your hand. We can't shake hands, both because it's prohibited now by gubernatorial order, apparently, and we're not present together. So if you'll take this as our virtual handshake, and we look forward to seeing you in Richmond when we're back to normal. And with that, I'll ask Mr. Coleman to adjourn court for the day, and as soon as Mr. Dean tells us that we're ready to conference, the judges will get back together. Thank you, Your Honor. Thank you, Your Honor. This honorable court stands adjourned, signed, and died. Godspeed, United States and this honorable court.
judges: G. Steven Agee, Barbara Milano Keenan, Julius N. Richardson